ORDERED.

**Dated:  September 14, 2022**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                     Case No. 8:20-bk-03069-MGW
                                                           Chapter 13
Marie Jean Golino,

        Debtor.
_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON LIMITATION OF HOMESTEAD EXEMPTION UNDER § 522(o)

To reduce the value of a debtor's homestead exemption under Bankruptcy Code § 522(o), a creditor must prove that the debtor, with the intent to hinder, delay, or defraud creditors, converted non-exempt property into his or her homestead. Here, the Debtor used $100,000 in proceeds from the sale of her previous home, which she claims was her homestead, to make a down payment on a new one. In this bankruptcy case, the Debtor claims the new home is exempt and seeks to avoid a judicial lien held by the Sutton Law Firm, which represented the Debtor in a state court divorce proceeding, because it is impairing her homestead exemption.

Claiming the Debtor failed to disclose the value of her previous home (and the proceeds from the sale of it) in financial affidavits the Debtor filed in her state court divorce proceeding, Sutton argues the Debtor should be judicially estopped from claiming her previous home was her homestead, thereby rendering the $100,000 funds non-exempt for purposes of § 522(o).

Judicial estoppel bars parties from taking inconsistent positions in different proceedings. The Debtor's alleged failure to disclose the value of her previous home (or the proceeds from the sale of it) in financial affidavits filed in state court is not inconsistent with the Debtor claiming in this Court that her previous home was her homestead. And even if the Debtor had taken inconsistent positions, Sutton failed to prove that the inconsistent positions were the result of anything other than inadvertence or mistake. Because the Court declines to invoke the doctrine of judicial estoppel to bar the Debtor from arguing her previous home was her homestead, the $100,000 used to make a down payment on the new home was exempt, defeating Sutton's request to limit the Debtor's homestead exemption under Bankruptcy Code § 522(o).

## I.    FINDINGS OF FACT

The Court held a half-day trial on a narrow issue: Should the Debtor be judicially estopped from claiming that a home she previously lived in for five years (three years before inheriting it from her father and two years after) was her

homestead?[1] The parties, however, devoted much of their post-trial briefs arguing over facts that are not relevant to the issue before the Court—let alone even in the record.[2] The relevant facts that are in the record are relatively straightforward and largely undisputed.[3]

### A.    The Debtor lived with her father for nearly three years.

In October 2009, the Debtor separated from her husband and, along with her two minor children, moved into her father's home.[4] At the time, the Debtor's father was suffering from lymphoma, and the Debtor was helping to care for him.[5] By December 2010, however, her father's health had improved, so the Debtor was planning on moving out.[6] But, as of May 2012, the Debtor was still living at her father's home, which was located at 412 Starr Ridge Drive in Lake Wales, Florida.

---

[1] Trial Tr., Doc. 162, p. 7, ll. 6 – 12; p. 67, ll. 20 -25; p. 105, ll. 14 – 19.

[2] *See, e.g.,* Doc. Nos. 126, 132, 142 & 146. Worse, after requesting and obtaining leave to file additional post-trial briefing, the parties used their additional briefing to lob insults at each other's respective counsel. *See, e.g.,* Doc. No. 142 at 2 (alleging that "Debtor's counsel advanced arguments related clearly to issues related to Debtor's counsel, who has yet to appear for any material hearing about which he complains he has prepared, including the trial related to the Debtor's *Post-Trial Memorandum* requested of the Court here, and his lack of professional respect or courtesy of Creditor's counsel") (citation omitted); Doc. No. 146 at 2 (alleging "[Debtor's counsel] had a pre-trial conference that was terminated early because of [Sutton's counsel's] profanity and belligerent tone").

[3] Trial Tr., Doc. No. 162, p. 7, ll. 6 – 12 ("[T]his matter has been pending for a long time and it appears it's, factually, fairly simple.").

[4] Trial Tr., Doc. No. 162, p. 77, ll. 2 – 4.

[5] Sutton Ex. 24, Doc. No. 111-1, p. 238, ll. 16 – 22.

[6] Sutton Ex. 24, Doc. No. 111-1, p. 239, ll. 2 – 14.

**B.    The Debtor inherits the Starr Ridge property and makes it her homestead.**

In May 2012, the Debtor's father passed away.[7] When he died, his will left the Starr Ridge Drive property—the home where the Debtor had been living for the past three years—to the Debtor.[8] After inheriting the Starr Ridge Drive property in June 2012, the Debtor lived in the property continuously until July 2014. During that time, the Debtor listed the Starr Ridge Drive property address on her driver's license and received bills there.[9]

**C.    The Debtor fails to pay the Sutton Law Firm nearly $40,000 for legal work it did in her divorce case.**

At some point after separating from her husband, the Debtor filed for divorce. It is unclear from the record in this case exactly what happened during the divorce proceeding. All this Court knows is that in February 2011, the Debtor retained the Sutton Law Firm to handle an appeal in her divorce case having to do with child support.[10] And it appears Sutton provided legal services to the Debtor from February 2011 through May 31, 2014.[11] Although the Debtor paid Sutton for some of her services, the Debtor still owed Sutton nearly $40,000 as of May 2014.[12]

---

[7] Sutton Ex. 15, Doc. No. 86-15, ¶ 1; Trial Tr., Doc. No. 162, p. 77, ll. 11 – 14.

[8] Sutton Ex. 15, Doc. No. 86-15, ¶¶ 2 – 6; Trial Tr., Doc. No. 162, p. 51, ll. 2 – 7; p. 77, ll. 11 – 24.

[9] Trial Tr., Doc. No. 162, p. 77, ll. 5 – 10.

[10] Sutton Ex. 1, Doc. No. 86-1, ¶ 1; Trial Tr., Doc. No. 162, p. 63, l. 22 – p. 64, l. 6.

[11] Sutton Ex. 2, Doc. No. 86-2.

[12] Sutton Ex. 2, Doc. No. 86-2, ¶ 5.

### D.      The Debtor sells the Starr Ridge Drive property.

When the Debtor first moved into the Starr Ridge Drive property in 2009, she was not working.[13] At some point, the Debtor went to school and, after switching her major from criminal justice to nursing, graduated with a nursing degree. The Debtor then got a nursing job in Zephyrhills, Florida.[14]

The commute from the Starr Ridge Drive property in Lake Wales to her job in Zephyrhills was long. So the Debtor decided to sell the property. In July 2014, the Debtor sold the Starr Ridge Drive property, netting more than $100,000 from the sale.[15]

### E.      The Debtor uses some of the Starr Ridge Drive sales proceeds to buy a new homestead.

After selling the Starr Ridge Drive property, the Debtor moved into an apartment while she looked for a new home in her children's school district.[16] Eventually, she found one on Sedgeford Drive in Lakeland, Florida, but it was still being built and would not be finished until February 2015.[17] In February 2015, eight

---

[13] Sutton Ex. 24, Doc. No. 111-1, p. 239, ll. 7 – 10.

[14] Trial Tr., Doc. No. 162, p. 78, ll. 19 – 25.

[15] Sutton Ex. 18, Doc. No. 86-18; Trial Tr., Doc. No. 162, p. 78, l. 19 – p. 79, l. 4; p. 92, ll. 1 – 23.

[16] Trial Tr., Doc. No. 162, p. 79, ll. 1 – 11.

[17] Trial Tr., Doc. No. 162, p. 79, ll. 1 – 21.

months after selling the Starr Ridge Drive property, the Debtor closed on her new home.[18]

The new home cost $168,540.[19] The Debtor put down a $100,000 down payment and financed the rest.[20] The $100,000 down payment came from the net sales proceeds from the Starr Ridge Drive property.[21]

### F.    The Sutton Law Firm obtains a $23,000 final judgment against the Debtor for unpaid fees.

In June 2014, Sutton filed a notice of charging lien for unpaid fees. At some point after that, the Debtor's former spouse paid $15,000 toward the balance owed to Sutton. That left a balance, as of July 15, 2015, of roughly $23,000.[22] Eventually, Sutton sued the Debtor for unpaid fees and obtained a $23,000 judgment against her.[23] It appears Sutton recorded a copy of her final judgment in the Polk County public records,[24] which means it would act as a lien on any real property the Debtor owned.

---

[18] Debtor's Ex. 15, Doc. No. 80-15; Trial Tr., Doc. No. 162, p. 79, ll. 1 – 21.

[19] Debtor's Ex. 15, Doc. No. 80-15.

[20] Debtor's Ex. 15, Doc. No. 80-15.

[21] Trial Tr., Doc. No. 162, p. 45, l. 25 – p. 46, l. 17; p. 92, ll. 1 – 23.

[22] Sutton Ex. 5, Doc. No. 86-5, ¶¶ 4 & 9.

[23] Sutton Ex. 5, Doc. No. 86-5. To be precise, the final judgment was for $22,991.75.

[24] Sutton Ex. 5, Doc. No. 86-5.

### G.    The Debtor files for bankruptcy and tries to avoid the judicial lien on her homestead.

On April 15, 2020, the Debtor filed for chapter 7 bankruptcy. On her Schedule C, she claimed the Sedgeford Drive property as exempt homestead.[25] The Debtor then moved to avoid Sutton's judgment lien against her homestead because it is impairing her homestead exemption.[26] Sutton objected to the Debtor's claim of exemption,[27] as well as the Debtor's motion to avoid her judgment lien,[28] under Bankruptcy Code § 522(o)(4).

## II.    Conclusions of Law

Section 522(o)(4) was added to the Bankruptcy Code as part of BAPCPA to limit a Debtor's ability to claim the homestead exemption under state law.[29] While Florida law essentially provides for an unlimited homestead exemption,[30] Bankruptcy Code § 522(o)(4) provides that, in bankruptcy, the value of a Debtor's

---

[25] Doc. No. 1, Schedule C.

[26] Doc. No. 11.

[27] Doc. No. 57.

[28] Doc. No. 43.

[29] *Willcut v. Willcut (In re Willcut)*, 472 B.R. 88 (B.A.P. 10th 2012) ("The addition of § 522(o ) to the Bankruptcy Code was "intended to strike a balance between the rights of debtors and creditors in states with unlimited homestead exemptions ... and to make clear that abusive pre-bankruptcy planning will not be tolerated at the expense of creditors." (quoting *Cipolla v. Roberts (In re Cipolla)*, 476 F. App'x 301, 305 (5th Cir. 2012)));  (Hon. Joan N. Feeney (Ret.), Hon. Michael G. Williamson & Michael J. Stepan, Esq., Bankruptcy Law Manual § 5:36 (5th ed. 2021) ("The 2005 Act added numerous restrictions to debtors' exemptions when a debtor elects state law exemptions in an attempt to curtail perceived abuses of exemptions by certain types of debtors.").

[30] Fla. Const. Art. X, § 4(a)(1).

interest in a homestead shall be reduced to the extent the value is attributable to non-exempt property that the Debtor converted into the homestead with the intent to hinder, delay, or defraud creditors.[31]

Here, Sutton contends the Debtor converted $100,000 in proceeds from the sale of the Starr Ridge Drive property into her homestead (i.e., the Sedgeford Drive property).[32] And Sutton contends the Debtor did so to keep the $100,000 (or at least $23,000 of it) from Sutton.[33] So Sutton contends the value of the Debtor's interest in her homestead should be reduced by $100,000 under § 522(o), which would allow Sutton's $23,000 judgment to be paid from the sale of the Debtor's homestead.

But to reduce the value of the Debtor's interest in her homestead under § 522(o), Sutton must prove that the Starr Ridge Drive property was non-exempt.[34] The Debtor, of course, contends that the Starr Ridge Drive property was exempt because it was her homestead. The evidence at trial supported the Debtor's claim that the Starr Ridge Drive property was her homestead: the undisputed evidence at

---

[31] 11 U.S.C. § 522(o)(4).

[32] Doc. No. 57 at 2.

[33] *Id.* at 2 – 3.

[34] *In re Savino*, 558 B.R. 1 (Bankr. D. Mass. 2016) ("There are four elements to establishing an objection under § 522(o): (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing; (2) the property that the debtor disposed of was nonexempt; (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor."); *In re Corbett*, 478 B.R. 62 (Bankr. D. Mass. 2012) ("The party objecting to a debtor's claimed homestead and seeking a reduction in amount pursuant to 11 U.S.C. § 522(o ) has the burden of proof using a preponderance of the evidence standard.").

trial established that the Debtor lived at the property continuously for five years (nearly three years before her father died, and a little more than two years after); she changed the address on her driver's license to the Starr Ridge Drive address; and she had her bills sent there. The Debtor also testified she had no intention of leaving the home.[35]

Rather than contest that the Starr Ridge Drive property was the Debtor's homestead as a factual matter,[36] Sutton instead argues that the Debtor should be judicially estopped from claiming the property was exempt. Sutton's judicial estoppel argument arises out of two financial affidavits the Debtor filed during her state court divorce case.[37]

The first financial affidavit was filed on August 26, 2013.[38] In that affidavit, the Debtor attested to having $39,418.30 in assets, plus a house with an unknown

---

[35] Trial Tr., Doc. No. 162, p. 78, ll. 11 – 18.

[36] The closest Sutton came to refuting the Debtor's claim that the Starr Ridge Drive property was her homestead, as a factual matter, is when Sutton introduced evidence that the Debtor testified during a December 2 – 3, 2010 hearing in state court that it was "not [her] intention to remain at [her] father's house." Sutton's Ex. 24, Doc. No. 111-1, p. 238, ll. 8 – 15. The Court, however, does not find that testimony probative for two reasons: First, the statement came nearly two years before she inherited the Starr Ridge Drive property. Second, it goes without saying that circumstances changed significantly after her testimony: whereas her father's health had been improving at the time of her testimony, two years later he had passed away.

[37] Doc. No. 126 ("The Debtor intentionally misrepresented her assets to her advantage on her August 26, 2013; and October 8, 2014 state court Financial Affidavits, misleading the state court and Sutton. As a result, she should be judicially estopped from claiming any benefit of that deception in this bankruptcy case.").

[38] Sutton Ex. 8, Doc. No. 86-8.

value; and $82,756.24 in liabilities.[39] No debt to Sutton was listed in the first affidavit. In the second affidavit, which was dated October 8, 2014, the Debtor attested to having $71,305.30 in assets, including $27,000 in cash; and $113,000 in liabilities, including $48,000 owed to Sutton.[40]

How these affidavits support a judicial estoppel claim is a bit of a mystery. To hear Sutton tell it, the Debtor intentionally failed to disclose the debt she owed to Sutton on her August 26, 2013 financial affidavit. Worse, Sutton says, the Debtor attempted to hide the Starr Ridge Drive property in plain sight by listing a "home" on her financial affidavit but claiming the value was "unknown."[41] Then, in her October 8, 2014 financial affidavit, the Debtor failed to list the Starr Ridge Drive property or the $100,000 or so in net sales proceeds she generated from the sale.[42] Sutton contends the Debtor should be judicially estopped from claiming her homestead as exempt because the Debtor bought the homestead using funds that, in Sutton's view, were concealed from the state court. Sutton misunderstands the doctrine of judicial estoppel.

---

[39] Sutton Ex. 8, Doc. No. 86-8.

[40] Sutton Ex. 9, Doc. No. 86-9.

[41] Doc. No. 126 at 5.

[42] Doc. No. 86-9. As explained above, the October 8, 2014 financial affidavit only discloses $27,000 in cash. *Id.*

The doctrine of judicial estoppel is used to prevent parties from assuming contrary positions in different proceedings.[43] As the Supreme Court explained in *New Hampshire v. Maine*, judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[44] The Eleventh Circuit has devised a two-part test to determine when judicial estoppel applies.[45]

Under that two-part test, this Court must first ask whether the party against whom estoppel is sought took an inconsistent position under oath in an earlier proceeding.[46] If the party did take an inconsistent position, this Court must then ask whether the inconsistent positions were "calculated to make a mockery of the judicial system," as opposed to "the result of inadvertence or mistake."[47] Here, Sutton does not satisfy either prong of the two-part test.

---

[43] *United States v. Gongora Baltan*, 798 F. App'x 597, 599 (11th Cir. 2020) ("A district court may apply judicial estoppel to prevent a party from assuming contrary positions in different proceedings.").

[44] 532 U.S. 742, 749 – 50 (2001).

[45] *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017) (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). In *Slater v. United States Steel Corp.*, the plaintiff asked the Eleventh Circuit to abandon its two-part test, first devised in *Burnes v. Pemco*, in favor of the three-part test devised by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 750 – 51 (2001). Slater, 871 F.3d at 1181 – 82. But the Eleventh Circuit declined to do so. *Id.* at 1182 ("Slater argues that we must abandon our test for applying judicial estoppel in favor of the *New Hampshire* test. . . . Consistent with *New Hampshire*'s recognition that its test was not exhaustive, we adhere to our two-part test in the scenario before us.").

[46] *Slater*, 871 F.3d at 1181.

[47] *Id.* at 1182.

Start with the first prong. It is true the statements in the financial affidavits were under oath and made in a prior proceeding. But none of the statements in the financial affidavits are inconsistent with the Debtor's claim that the Starr Ridge Drive property was her homestead.

In the August 26, 2013 financial affidavit, which was filed after the Debtor inherited the Starr Ridge Drive property, the Debtor disclosed that she owned a "home." In the October 8, 2014 financial affidavit, which was filed roughly two months after the Debtor sold the Starr Ridge Drive property, the Debtor did not list a home among her assets.[48] Both statements were true—and consistent with the Debtor's claim that the Starr Ridge Drive property was her homestead.

Sutton makes much of the fact that, in her August 26, 2013 affidavit, the Debtor listed the value of her "home" as "unknown."[49] And Sutton contends the Debtor failed to disclose the $100,000 in net sales proceeds from the Starr Ridge Drive property in her October 9, 2014 financial affidavit.[50] But even if disclosing the "home" as having an "unknown" value, or failing to disclose $100,000 in sales proceeds, was improper, it has nothing to do with the Debtor's claim that the Starr

---

[48] The Debtor also filed a financial affidavit on October 9, 2018, after the Debtor bought the Sedgeford Drive property. Sutton Ex. 10, Doc. No. 86-10; Sutton Ex. 19, Doc. No. 86-19. That affidavit disclosed that the Debtor owned a home worth $160,000. Sutton Ex. 10, Doc. No. 86-10.

[49] Doc. No. 126 at 6 ("Moreover, with regard to the crux of the Debtor's manipulation of the state trial court, her description on her August 26, 2013 *Financial Affidavit* of real estate, she only discloses "home," with a value of "*unknown*," resulting in claimed personalty property assets (as of August 26, 2013) with a total value of only $39,319.30."); Sutton Ex. 8, Doc. No. 86-8.

[50] Doc. No. 126 at 9; Sutton Ex. 8, Doc. No. 86-8.

Ridge Drive property was her homestead. Because any alleged misstatements in the Debtor's state court financial affidavits are irrelevant to the Debtor's homestead exemption claim, it would be inappropriate for this Court to invoke judicial estoppel to bar the Debtor from claiming the Starr Ridge Drive property was her homestead.[51]

Now let's turn to the second prong. Let's assume the Debtor's financial affidavits were somehow inconsistent with her claim here that the Starr Ridge Drive property was her homestead. Even if that were true, Sutton must also show that the Debtor took those inconsistent positions intending to "make a mockery of the judicial system.[52] "[B]ecause judicial estoppel 'looks towards cold manipulation and not an unthinking or confused blunder,'" courts should not apply judicial estoppel when the inconsistent positions were the result of inadvertence or mistake.[53]

To convince this Court the financial affidavits were the result of cold manipulation, as opposed to an unthinking or confused blunder, Sutton relies on the following "facts," which she contends show the Debtor used the financial affidavits to manipulate the state court into awarding her relief:

- The Debtor was represented by a 20-year lawyer experienced in family law;

---

[51] *Green v. Ga. Dep't of Health & Human Servs.*, 847 F. App'x 817, 820 – 21 (11th Cir. 2021) ("But the defenses that Green argues were inconsistent and fraudulent had no bearing on the district court's dismissal of Green's claims as time-barred. Because the defendants' defenses were irrelevant to the court's analysis, it did not err in failing to invoke judicial estoppel.").

[52] *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017).

[53] *Slater*, 871 F.3d at 1181.

- The Debtor used her financial affidavits to establish or continue child support, spousal support, and a contribution toward her attorney's fees;

- In particular, the Debtor filed her August 26, 2013 affidavit for the purpose of extending spousal support beyond the initial term provided for in the final divorce decree; and

- The Debtor received financial relief from the state court based on her financial affidavits.[54]

The Debtor disputes she was attempting to manipulate the state court. For one thing, the Debtor says she was not counseled properly on how to complete her financial affidavits, so she thought she was only supposed to list marital affidavits on her financial affidavits.[55] For another thing, the Debtor says both her ex-husband and the Court were aware she had inherited the Starr Ridge Drive property, as evidenced by the fact that, during a hearing, the state court judge discussed the fact that the Debtor failed to list the Starr Ridge Drive property on her financial affidavit.[56]

---

[54] Doc. No. 142 at 7 – 9.

[55] Doc. No. 132 at 2 – 3.

[56] Doc. No. 126 at 11. In support of that argument, the Debtor relies on one of Sutton's proposed exhibits (Suttons' proposed Exhibit 3), a state court order in which the state court concluded "[The Debtor] offered no supporting case law for the proposition that the inheritance should not be included for purposes of determining the parties' financial resources. The [Debtor] was the only heir and beneficiary to her father's estate, and so there is no dispute that [the Debtor] is the legal owner of the assets she inherited, as shown by the Order of Summary Administration dated July 24, 2012. . . . A bank statement produced by the Former Husband showed that monies in the approximate amount of $44,000 were held in the [Debtor's] son's name. The [Debtor's] financial affidavit (dated August 21, 2013), shows that on July 15, 2013, the [Debtor] had monies of $49,000 in her bank account. The [Debtor] concedes that she placed the cash she inherited into a bank account in the son's name." Doc. No. 126 at 11 (citing Sutton Ex. 3, Doc. No. 86-3, at 8 n.5).

Here's the problem: none of the "facts" that Sutton relies on to support her argument that the Debtor used the financial affidavits to manipulate the state court are actually in evidence in this case. Equally problematic, none of the facts the Debtor relies on to refute any claim of manipulation—i.e., that she was not properly advised on how to complete the financial affidavit or that the state court was aware she had inherited the Starr Ridge Drive property—are in evidence either.[57] In ruling on whether any inconsistent statements were "calculated to make a mockery of the court system," the Court is limited to the facts adduced at trial.

When limited to the actual record in this case, the best Sutton can come up with to prove the Debtor was trying to make a mockery of the court system is what Sutton characterizes as the Debtor's "evasive" testimony during which (according to Sutton) the "Debtor claimed an inability to recall virtually anything."[58] To be sure, the Debtor could not recall answers to a number of questions, but that is not surprising considering the questions were about events that took place (or documents the Debtor signed) as recently as three or four years ago and as far back as a decade

---

[57] This is a persistent problem in this case. Much of the parties' arguments in their post-trial briefings (maybe the majority of their arguments) is devoted to discussing facts that are not in the record. Doc. Nos. 126, 132, 142 & 146.

[58] Doc. No. 126 at 3. Sutton claims the "lack of candor by the Debtor became so apparent as to cause Sutton's counsel to inquire whether Debtor was taking medication that would cause impairment of her cognitive abilities." *Id.* In actuality, that was the very first question Sutton's counsel asked—before the Debtor had testified once that she could not recall a fact. Trial Tr., p. 16, l. 18 – p. 18, l. 19. Sutton also suggests that "[i]n response to questions by Sutton's counsel, Debtor claimed *an inability to recall virtually anything.*" Doc. No. 126 at 3 (emphasis added). That's not true either. During roughly two hours of questioning, the Debtor (by the Court's rough estimate) answered nearly forty questions, give or take a few.

ago. Having considered the evidence in this case, including the Debtor's testimony, there is no evidence that, to the extent the Debtor took inconsistent positions in her financial affidavits, those inconsistent statements were the result of anything other than inadvertence or mistake.

## III.    CONCLUSION

This was an easy case: as a factual matter, the Starr Ridge Drive property was the Debtor's homestead. And because the Debtor has not taken any inconsistent positions, the Court declines to invoke the doctrine of judicial estoppel to bar the Debtor from claiming that the Starr Ridge Drive property was her homestead. Thus, the $100,000 in net sales proceeds from the Starr Ridge Drive property, which were used for the down payment on the Debtor's homestead, were exempt.

For that reason, there is no basis for limiting the Debtor's homestead under Bankruptcy Code § 522(o). The Court will therefore enter a separate order overruling Sutton's objection to the Debtor's claim of exemptions and granting the Debtor's motion to avoid Sutton's judgment lien.

> Attorney Christina Behrman de Colindres is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the Findings of Fact and Conclusions of Law.

**Jay M. Weller, Esq.**
**Christina Behrman de Colindres, Esq.**
**Weller Legal Group, Inc.**
 *Counsel for the Debtor*

**Matthew J. Kovschak, Esq.**
**Sutton Law Firm**
 *Counsel for Sutton Law Firm*